**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Aboubakry S.,

Petitioner,

v.

Todd Blanche, et al.,

Respondents.

No. 0:26-cv-04668 (KMM/EMB)

**ORDER**

---

This matter is before the Court on Petitioner Aboubarky S.'s ("Petitioner" or "Mr. S") Verified Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Pet., Dkt. 1. For the reasons set forth below, the Petition is granted.

## BACKGROUND

Mr. S is from Mauritania. Pet. ¶ 2. He entered the United States on June 12, 2023 near Lukeville, Arizona without inspection. Pet. ¶ 2; Robinson Decl., Ex. B. Shortly after he crossed the border, he was detained by United States immigration officials. Pet. ¶ 2. That same day, immigration officers issued a Notice to Appear ("NTA") for Mr. S. The NTA charged Mr. S with being subject to removal under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). Robinson Decl., Ex. B. Under § 1182(a)(6)(A)(i), "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." Such a person is subject to removal

under 8 U.S.C. § 1227(a)(1)(A) (providing that "inadmissible" aliens are deportable). The government did not further prosecute his removal case at that time.

Mr. S was released on an Order of Release on Recognizance ("OREC") two days later. Pet. ¶ 2; Pet., Ex. A; Robinson Decl., Ex. C. Among other conditions, the OREC required Mr. S to report for any hearing or interview as directed by Immigration and Customs Enforcement ("ICE") and other agencies; to surrender for removal if ordered to do so; to maintain the same residence unless he received permission from an immigration officer to change it; to not commit any crimes while on the OREC; to "not violate any local, State or Federal laws or ordinances"; and to assist ICE in obtaining any necessary travel documents. Pet., Ex. A; Robinson Decl., Ex. C.

After entering the United States, Mr. S filed an application for asylum. Pet. ¶ 15. Mr. S has never missed a check-in with ICE during the three years since he entered the United States, he has a valid work authorization card, and he recently has been living and working in Minot, North Dakota. Pet. ¶ 15. In August 2026, however, Mr. S was twice convicted in North Dakota court of driving without a license. Pet., Ex. B; Robinson Decl. ¶ 7, Ex. E. Under North Dakota law, these are not criminal offenses.

Mr. S had a check-in with ICE scheduled for September 1, 2026, which he attended. Pet. ¶ 17. When he arrived at the ICE facility, agents conducted records checks and learned about his August 2026 convictions for driving without a license. Robinson Decl., Ex. E at 2. ICE officers determined that his conduct violated the terms of his OREC and canceled the order of release on that basis. Robinson Decl., Ex. E at 2; Robinson Decl., Ex. C at 1. ICE agents escorted Mr. S to a telephone with an interpreter and informed him he was

under arrest. At that point, they served him with a Form I-200 administrative warrant for his arrest. Robinson Decl., Ex. E at 2; Robinson Decl., Ex. D. The Form I-200 warrant indicates that he was being arrested based on statements he made voluntarily to an immigration officer or based on other reliable evidence that indicates he lacked immigration status. Robinson Decl., Ex. D.

An immigration judge ("IJ") issued an order for Mr. S's removal on October 23, 2026. Pet. ¶ 2. The IJ denied his requests for asylum, withholding of removal, and deferral of removal. Dkt. 6-6. Mr. S has until November 23, 2026 to file an appeal of the removal order with the Bureau of Immigration Appeals ("BIA").[1] Pet. ¶ 2; Robinson Decl., Ex. F. Mr. S is currently confined in the Kandiyohi Jail. Pet. ¶ 19.

Mr. S filed his Petition on October 30, 2026, challenging his ongoing detention pending the finality of his removal proceedings. He claims that his detention violates his due process rights under the Fifth Amendment because Respondents failed to give him adequate notice and an opportunity to be heard before revoking his OREC (Counts I and II). He also claims that Respondents violated the Administrative Procedure Act ("APA") when they revoked his OREC in the absence of materially changed circumstances and because the OREC was revoked by a person without authority to do so (Counts III and IV).[2]

[1] If Mr. S does not file a timely appeal with the BIA, his removal order becomes final when the time for doing so expires. 8 C.F.R. § 1241.1(c). If he does file an appeal, his removal order becomes final when the BIA dismisses his appeal. *Id.* § 1241.1(a).

[2] Petitioner acknowledges that the claim raised in Count V of the Petition is foreclosed by *Avila v. Bondi*, 170 F.4th 1128, 1135–36 (8th Cir. 2026).

## DISCUSSION

A district court may grant a petition for a writ of habeas corpus when the petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner has the burden of proving his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

While articulated in various ways in the claims in the Petition, Mr. S primarily alleges that his ongoing detention is unlawful because Respondents, pursuant to 8 U.S.C. § 1225(b)(2)(A), purport to exercise mandatory statutory detention authority that they do not possess under the circumstances. He asserts that because Respondents made the choice to release him on his own recognizance when he entered the United States—by issuing the OREC—they granted him a form of "conditional parole" into the country under 8 U.S.C. § 1226(a)(2)(B). Thus, to validly revoke his OREC and take him into custody, Mr. S alleges he was entitled to pre-deprivation notice and an opportunity to be heard. Further, under *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981), Respondents were required to establish that there were materially changed circumstances supporting his detention due to a risk of flight or a danger to the community.

Respondents disagree, arguing that Mr. S is present in the United States without having been admitted; is, therefore, "an applicant for admission" within the meaning of 8 U.S.C. § 1225(a)(1); and, consequently, is subject to mandatory detention under § 1225(b)(2)(A). Resp. at 2–5. According to Respondents, the fact that Mr. S was released on an OREC does not entitle him to any greater protections nor entitlement to a bond hearing, and the provisions of § 1226 are entirely inapplicable. Further, they argue that the

fact that the Form I-200 served on Mr. S references INA § 236 (which cross-references to 8 U.S.C. § 1226) does not mean that he is entitled to greater protections from detention under § 1226.[3] Resp. at 5, 18–20. Next, Respondents contend that Mr. S is not entitled to a bond hearing based on any alleged denial of his due process rights because cases like *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024) and *Demore v. Kim*, 538 U.S. 510, 523 (2003) foreclose such a claim.[4] Resp. at 6–16. Finally, Respondents argue that there is no flaw with the I-200 arrest warrant or the NTA because they were both issued prior to Petitioner's arrest and any flaw in his arrest procedure would not entitle him to habeas relief. Resp. at 16–18, 20–21.

---

[3] On this point, the Court agrees. The undersigned is not persuaded that the indirect reference to INA § 236 in a Form I-200 warrant means that the government committed to detaining Mr. S pursuant to § 1226. *See Venancio P. J. v. Blanche*, No. 26-cv-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June, 29, 2026) (rejecting the argument that the language in a Form I-200 represents to a noncitizen that he is being arrested pursuant to that statute).

[4] Judges within this District have reached different conclusions on whether due process claims are foreclosed for those who are now treated as applicants for admission under § 1225(b)(2). *Compare Eliseo C. v. Blanche*, No. 26-cv-2282 (ECT/SGE), 2026 WL 2683449, at *4 (D. Minn. June 29, 2026) (concluding that "*Banyee* and *Demore* are controlling in cases where a petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)" and rejecting a due process claim), *with Felipe S.P. v. Blanche*, No. 26-cv-2212 (NEB/DJF), 2026 WL 1911656 (D. Minn. July 2, 2026) (conducting a due process analysis, rejecting the argument that such a claim was foreclosed by *Banyee*, *Demore*, and other cases, and requiring the government to provide the petitioner with a bond hearing). The undersigned has held, in several cases, that due process requires a bond hearing. *E.g.*, *Hector Luis P.M.*, No. 0:26-cv-04211 (KMM/ECW), 2026 WL 3150681 (D. Minn. Oct. 21, 2026). The Court remains unpersuaded by Respondents' arguments to the contrary but finds that this issue is not central to this case because Mr. S's release on recognizance separately entitles him to more process than he has received.

Contrary to Respondents' position, this case is not controlled by 8 U.S.C. § 1225(b)(2)(A) because the government previously released Mr. S. on his own recognizance. At that point, he received a form of conditional parole that created a protected liberty interest and funneled him into a § 1226(a) detention regime that provides greater protections than Respondents would now extend in light of their classification of him as an applicant for admission. *Sandhu v. Mullin*, No. 7;26CV5009, 2026 WL 1146643, at *3 (D. Neb. Apr. 28, 2026). As this Court explained in *Israel G.M. v. Venturella*, the prior discretionary release of a petitioner on conditional parole (including through an order of release on recognizance) is an assertion that the petitioner was detained originally, and then released, under § 1226(a), not § 1225(b)(2)(A). No. 26-cv-3648 (KMM/LIB), 2026 WL 3000948, at *3 (D. Minn. Oct. 6, 2026) (quoting *Roberto B.Q. v. Lyons*, No. 26-cv-2656 (PJS/SGE), Dkt. 8, slip op. at 4 n.2 (D. Minn. June 10, 2026)). And as the Court in *Roberto B.Q.* stated, "'the Government is not allowed to change horses midstream. It is stuck with the horse on which it rode into court' – here § 1226." *Roberto B.Q.*, Dkt. 8, slip op. at 4 n.2 (quoting *Soulemaine C. v. Blanche*, No. 26-CV-2215 (LMP/JFD), 2026 WL 1180075, at *3 (D. Minn. Apr. 30, 2026)). And § 1226(a) affords Mr. S. certain procedural protections before that release can be revoked.

The prior release of Mr. S under § 1226(a) "'reflects a determination by the government that [he] is not a danger to the community or a flight risk,' and [he] has a strong interest in remaining at liberty unless [he] no longer meet[s] those criteria." *Boubucar Keita v. Warden, McCook Detention Ctr.*, No. 8:26CV366, 2026 WL 3152150, at *4 (D. Neb. Oct. 21, 2026) (quoting *Martinez v. Mullin*, No. 5:26-cv-03805 (BFM), 2026 WL 2111747,

at *3 (C.D. Cal. July 20, 2026)). At minimum, therefore, Mr. S is "entitle[d] to the procedure authorized by Congress." *Sandhu*, 2026 WL 1146643, at * 3 (quoting *Singh v. Noem*, No. 2:26-cv-00427-KWR-KK, 2026 WL 766228, at *6 (D.N.M. Mar. 18, 2026)). But because Respondents have taken the position that Mr. S is subject to mandatory detention under § 1225(b)(2), he has not received those procedural protections.

Certainly, the government retains broad authority to revoke Mr. S's bond or parole. *Yandri Joselito F.E. v. Blanche*, No. 26-cv-3835 (LMP/DTS), 2026 WL 2676764, at *2 (D. Minn. Sept. 11, 2026) (quoting *Sandhu*, 2026 WL 1146643, at *4). But to exercise the discretion to revoke Mr. S's release under § 1226(a), "some process is required." *Keita*, 2026 WL 3152150, at *5 (citing *Betancourth v. Tate*, 822 F. Supp. 3d 762, 768 (S.D. Tex. 2026)). This includes "an individualized determination that release is no longer appropriate under the terms" set in his OREC, meaning a determination that Mr. S's conduct indicates his continued release presents a risk of flight or danger to the community. *Id.* (citing *Martinez*, 2026 WL 2111747, at *3); *see also* 8 C.F.R. § 1236.1(c)(8) (permitting an immigration officer to release a noncitizen when he demonstrates to the officer that his release would not endanger the public and that he is likely to appear for future proceedings).

As several courts have explained, Mr. S was entitled to have his release revoked, if at all, *for a reason* and to receive notice and an opportunity to respond before that revocation occurs. *E.g.*, *Sandhu*, 2026 WL 1146643, at *4. Certainly, Respondents now point to a reason why Mr. S's OREC was revoked. They say he violated the condition of his OREC that required him to "not violate any local, State or Federal laws or ordinances" when he was convicted of driving without a license in August 2026. But there is nothing in

the record that suggests Mr. S received notice or an opportunity to respond before his release was revoked. *Keita*, 2026 WL 3152150, at *5 (finding that "[e]ven if Keita's conviction for driving without insurance was a violation of [an OREC condition that he must not violate any local, State, or Federal laws] and cause for ICE revoke his conditional parole, there is no evidence that Keita was ever given notice or a meaningful opportunity to respond"). Nor is there any indication in the record that an official made an individualized determination that Mr. S.'s noncriminal driving violations constituted changed circumstances indicating Mr. S is a flight risk or a danger to the community. *Israel G.M.*, 2026 WL 3000948, at *6; *Singh*, 2026 WL 1021846, at *4 ("Aside from the minor traffic violation that tipped ICE to Singh's status, the Government offers nothing to suggest that Singh failed to abide by the conditions of his bond.").

In addition, an applicable DHS regulation provides that only certain officials had the authority to revoke Mr. S's parole:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.R.F. § 236.1(c)(9). This means that an appropriate official identified by the regulation must exercise the discretionary authority to revoke parole. *Sandhu*, 2026 WL 1146643, at *4 (finding a purported revocation of an OREC was not shown to be lawful where there was no evidence that a "'district director, acting director, deputy district director, assistant

district director for investigations, assistant district director for detention and deportation, or officer in charge' exercised discretion to revoke Sandhu's conditional parole"). The signature on the cancelation form is illegible and contains no indication of the role of the official who completed it. And the only evidence indicating who canceled Mr. S's OREC is a statement in the report of a Deportation Officer. It states that a Supervisory Deportation and Detention Officer ("SDDO") made the decision. Robinson Decl., Ex. E at 2. But an SDDO is not among those authorized to exercise the authority granted by regulation to revoke Mr. S's OREC. *See Israel G.M.*, 2026 WL 3000948, at *6 (finding that an SDDO is not among those listed in the regulation authorized to revoke a release); *Wilson T. v. Blanche*, No. 26-cv-04331 (MJD/DLM), 2026 WL 3334192, at *3 (D. Minn. Nov. 4, 2026) (same).

Because the events that occurred here leading to Mr. S's current detention did not comply with the procedures he was entitled to receive before his liberty was taken away, the revocation of his OREC was unlawful. Under these circumstances, "[Mr. S] is presently detained while 'the order releasing him on his own recognizance remains operative.'" *Bryan A.Q.C. v. Lyons*, No. CV 26-3165 (JRT/EMB), 2026 WL 1998719, at *3 (D. Minn. July 10, 2026) (quoting *Roberto B.Q.*, Civ. No. 26-2656, slip op. at 5). "ICE failed to provide a lawful basis for revoking Petitioner's conditional parole, . . . his parole remains intact, and . . . his present detention is therefore unlawful." *Id.* Accordingly, Mr. S is entitled to release from custody. "[A] lesser measure, like ordering a bond hearing, cannot cure the fact that the petitioner is detained while [his] conditional parole is still ongoing because it has not been properly terminated. To remedy that breach, [he] must be released

and put in the same position [he] was in before [his] re-detention—i.e., on conditional parole subject to the conditions set out in the order of release on recognizance. *Lopez Mateo v. Samuelson*, No. 8:26-CV-541, 2026 WL 2859441, at *2 (D. Neb. Sept. 23, 2026).[5]

**ORDER**

For the reasons stated above, **IT IS HEREBY ORDERED THAT**:

1. Petitioner's Verified Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Dkt. 1) is **GRANTED** as stated in this Order.

2. Respondents shall release Petitioner from custody within 24 hours, subject to the same conditions in his Order of Recognizance.

3. Within 48 hours after Petitioner is released from Respondents' custody, Respondents shall file a status report with the Court notifying the Court and opposing counsel that his release has taken place.

**Let Judgment be entered accordingly.**

Date: November 23, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge

[5] This is not to say that Respondents lack the power to revoke Mr. S's conditional parole and detain him pending the final resolution of his removal proceedings. Indeed, the Court does not substitute its own judgment for any immigration official here about whether Mr. S's conduct supports a change in his release status. But if Respondents seek to revoke his release and detain him while his removal proceedings remain pending, they must comply with the procedures Mr. S is entitled to receive in connection with such a revocation.